[No. 780-3. Division Three. April 2, 1974.]

THE DEPARTMENT OF MOTOR VEHICLES, *Respondent,* v. PAUL D. RIBA, *Appellant.*

*Michael D. Cronin* (of *Winston, Cashatt, Repsold, Mc-Nichols, Connelly & Driscoll*), for appellant.

*Slade Gorton, Attorney General,* and *David R. Minikel, Assistant,* for respondent.

McINTURFF, J.—Defendant appeals from a judgment of the trial court upholding the action of the Washington State Department of Motor Vehicles, suspending defendant's driver's license for 6 months for refusing to submit to the breathalyzer test.

After arresting the defendant for driving while under the influence of liquor, the officer testified that he advised defendant of his constitutional rights at the scene of the arrest. Later at the Spokane County jail, the arresting officer read to defendant from printed forms, the implied consent warnings contemplated by RCW 46.20.308, and the constitutional right warnings contemplated by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). Defendant signed the implied consent warning form but did not sign the form notifying him of his constitutional rights.

Defendant was then asked to submit to the breathalyzer test, but he requested he be allowed to speak to his attorney first. Defendant called his attorney, and after this conversation, was again requested to submit to the breathalyzer test. Defendant answered that he had forgotten to discuss the breathalyzer test with his attorney, and requested that he be allowed to again call his attorney. The arresting officer then asked defendant to submit to the breathalyzer test several times, to which defendant made no verbal response. At this point the arresting officer turned defendant over to the booking officer of the Spokane County jail and left the immediate area. The booking officer allowed defendant to again call his attorney, and it was during this conversation that the various ramifications of either submitting or not submitting to the breathalyzer test were discussed. The final decision was left to the defendant. After this conversation, the defendant had some doubts because he had been told that it didn't take much for the breathalyzer to indicate he was under the influence of liquor and, if convicted, his insurance might be canceled or his operator's license suspended, etc.

Later, during the course of booking procedure, defendant was told by an unidentified deputy that he was foolish in not taking the test because the court would be much easier on him if he had taken the test since it was his first offense. Thereafter, defendant requested the breathalyzer test. He was informed that it was too late; the arresting officer had left the jail.

The singular issue is whether there is substantial evidence in the record to support the trial court's finding that defendant refused to submit to the chemical test of his breath within the meaning of the language contained in RCW 46.20.308 (3). RCW 46.20.308 (3) provides as follows:

(3) If, following his arrest, the person arrested refuses upon the request of a law enforcement officer to submit to a chemical test of his breath, after being informed that his refusal will result in the revocation or denial of his privilege to drive, no test shall be given. The department of motor vehicles, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor and that the person had refused to submit to the test upon the request of the law enforcement officer after being informed that such refusal would result in the revocation or denial of his privilege to drive, shall revoke his license or permit to drive or any nonresident operating privilege. If the person is a resident without a license or permit to operate a motor vehicle in this state, the department shall deny to the person the issuance of a license or permit for a period of six months after the date of the alleged violation, subject to review as hereinafter provided.

Defendant's argument is threefold. Initially, defendant contends that he never, in fact, refused to submit to the breathalyzer test; secondly, regardless of whether there is a right to contact counsel prior to submitting to the breathalyzer test, the fact he was allowed to do so in this case places a burden on the officers to be certain defendant had a fair opportunity to submit to the test; or, alternatively, an

opportunity to unequivocally refuse to submit to the breathalyzer test after conferring with counsel; and lastly, defendant argues that the reading of the implied consent warnings, along with the readings of the *Miranda* warnings, are confusing and it is incumbent upon the police officers to specifically inform the accused that he has no right to consult an attorney before either consenting or refusing to take the breathalyzer test.

In answer to defendant's first two contentions, we initially note that findings of the trial court will not be disturbed on appeal if they are supported by substantial evidence. *Sylvester v. Imhoff*, 81 Wn.2d 637, 503 P.2d 734 (1972); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). The record in the instant case does contain substantial evidence supporting the trial court's finding of fact No. 6, to which defendant assigns error, specifically "after having so been informed the petitioner refused to submit to a chemical test of his breath." Implied consent warnings contemplated by RCW 46.20.308 were not only read to defendant, but he further read and signed the form indicating his acknowledgment that he had been read the rights contained in the form.

In *Department of Motor Vehicles v. McElwain*, 80 Wn.2d 624, 496 P.2d 963 (1972), the driver was too intoxicated to understand the advice given him and respond intelligently. It was contended that an intoxicated person could not make an intelligent judgment on whether to refuse the breath test. In *McElwain*, the court said at page 628:

> The statute does provide that the operator shall be advised, and the obvious purpose of this requirement is to provide him the opportunity of exercising an intelligent judgment if he is capable of doing so. But we fail to find anywhere in the statute an expressed intent that an operator who, while not unconscious, is yet too intoxicated to understand the advice given him and to respond intelligently to it, shall be excused from the penalty provided therein for refusal to comply with the request that he submit to a test.
> We conclude that when the advice as to the conse-

quences of a refusal is given in the form prescribed by the statute, and the operator, though conscious, does not willingly submit and cooperate in the administration of a test, he must be deemed to have refused.

The latest case concerning intelligent refusal is *Junkley v. Department of Motor Vehicles*, 7 Wn. App. 827, 503 P.2d 752 (1972), where it was contended the defendant was incapable of understanding the advice required under RCW 46.20.308 due to the combined effect of his consumption of alcohol and drugs. At page 830 the court said:

> [T]he statute requires only that a person be given the opportunity to exercise an intelligent judgment. Junkley was given that opportunity. . . . His degree of intoxication is not a proper consideration in determining if the arresting officers afforded him the opportunity to exercise an intelligent judgment to submit or refuse to submit to a chemical test of his breath.

In the instant case defendant was requested to submit to the breathalyzer test, but instead, he requested to contact his attorney. After contacting his attorney he was again requested to submit to the breathalyzer test, but stated that he had forgotten to discuss this with his attorney. At that time other requests were made to defendant to submit to the test, to which he made no verbal response.

 Based upon *McElwain* and *Junkley*, there is no question that under RCW 46.20.308 the "opportunity to exercise an intelligent judgment" has nothing to do with the capability of the mind to reason, as long as the person is conscious. The defendant was conscious at all times and, under the present statutory and case law, was given an opportunity to exercise an intelligent judgment before and after his first call to his lawyer. His refusal to answer whether he would take the test is deemed a refusal under *McElwain*.

 It is next urged that the reading of the implied consent warnings, along with the reading of constitutional rights contemplated by the *Miranda* decision are confusing because the accused may be led to believe he has a right to

consult with an attorney before submitting to the breathalyzer test. Defendant cites the rationale of *Rust v. Department of Motor Vehicles,* 267 Cal. App. 2d 545, 73 Cal. Rptr. 366 (1968). In *Rust,* the court held that where an officer's reading of both the implied consent rights and the individual's constitutional rights confuse the defendant concerning his right to counsel prior to submission to the breathalyzer test, this confusion must be clarified prior to a valid refusal to submit to the test. We agree, but find *Rust* not dispositive of the present case.

In *Strand v. Department of Motor Vehicles,* 8 Wn. App. 877, 878, 509 P.2d 999 (1973), the court stated:

A driver who is advised of his rights under the implied consent law but declines to take a breathalyzer test is deemed to have "refused" the test so as to require revocation of his license unless he *objectively and unequivocally* manifested that he did not understand his rights and the warning concerning the consequences of refusal and was denied clarification. *A lack of understanding not made apparent to the officer is of no consequence.*

(Italics ours.)

The record in the instant case is clear that defendant did not objectively and unequivocally manifest a lack of understanding to the officer. The clarification requirement enunciated in *Rust* is operative only upon defendant's objective and unequivocal communication of his lack of understanding to the police officer. Therefore, any confusion in the defendant's mind is inconsequential because it was unmanifested to the officer. *Strand v. Department of Motor Vehicles, supra.*

Judgment of the trial court is affirmed.

GREEN, C.J., and MUNSON, J., concur.