[No. 43613.   En Banc.   August 28, 1975.]

THE STATE OF WASHINGTON, *Petitioner*, v. WILLIAM B. LEWIS, *Respondent.*

*John C. Merkel, Prosecuting Attorney*, for petitioner.

*Richard J. Thorpe*, for respondent.

BRACHTENBACH, J.—The defendant was convicted of one count of second-degree perjury and two counts of grand larceny by possession of stolen automobiles. He appealed to the Court of Appeals which affirmed the grand larceny convictions, but reversed the perjury conviction. *State v. Lewis*, 12 Wn. App. 208, 529 P.2d 835 (1974). The State petitioned for review of the reversal of the perjury conviction which is the sole issue here. We reverse the Court of Appeals and affirm the conviction.

From the testimony, the jury could have found that the defendant acquired several stolen cars of a make and model similar or identical to ones which he legally owned. To acquire license plates for the stolen vehicles, defendant would apply for replacement plates for vehicles to which he had title. The perjury charge arose from the defendant's affidavit by which he applied for such a set of replacement license plates.

Defendant sought those replacement plates from a local agent who was authorized by the State to sell them. The defendant told the agent that a car, which he legally owned, had been wrecked and that the registration and license plates were lost. This conversation occurred on a Saturday so the agent advised defendant to return when the county auditor's office was open so he could obtain necessary information. A short time later the defendant applied to an employee of the state agent for the plates. At that time the defendant signed a form affidavit furnished by the State Department of Motor Vehicles. It was entitled "Affidavit of Loss for Tab, License Plate or Registration." It was signed by defendant. Above his signature appear these words: "I, William B. Lewis, being duly sworn on oath depose and say . . ." The employee later presented the affidavit to the agent, a notary, who was not present when the defendant signed. The employee advised the notary that it had been signed in her presence and the notary recognized the defendant's signature. The agent notarized and processed the affidavit. Defendant received replacement plates although the originals in fact were not lost.

The second-degree perjury statute, RCW 9.72.030, provides:

> Every person who, whether orally or in writing . . . shall knowingly swear falsely concerning any matter whatsoever, shall be guilty of perjury in the second degree . . .

"Oath" and "swear" are defined in RCW 9.72.040:

> The term "oath" shall include an affirmation and every other mode authorized by law of attesting the truth of

that which is stated. A person who shall state any matter under oath shall be deemed to "swear" thereto.

■  It is well established that no particular ritualistic form is necessary for one to take an oath. Rather, emphasis is upon some unequivocal act by which a person consciously takes on himself the obligation of an oath. *In re Rice*, 35 Ill. App. 2d 79, 84, 181 N.E.2d 742 (1962).

We have held that merely signing an affidavit in the presence of a notary or other official authorized to administer oaths is sufficient to constitute the taking of an oath. *State v. Douglas*, 71 Wn.2d 303, 428 P.2d 535 (1967); *State v. Dodd*, 193 Wash. 26, 74 P.2d 497 (1937). Authorities to the contrary are more stringent and require a formalized oath-taking process. Clearly we have departed from such an approach. *O'Reilly v. People*, 86 N.Y. 154, 40 Am. R. 525 (1881). The only possible distinction between this case and the *Douglas* and *Dodd* holdings is that the affidavit was signed out of the presence of the notary.

■  However, the legislature has declared that irregularity in administering or taking of an oath is no defense to a prosecution for perjury. RCW 9.72.050 provides:

It shall be no defense to a prosecution for perjury that an oath was administered or *taken in an irregular manner . . . It shall be sufficient that he actually gave such* testimony or made such deposition, certificate or *affidavit.*

(Italics ours.)

Here the defendant signed, in the presence of an employee of the notary, a document entitled an affidavit which affirmatively stated that it was sworn on oath. The defendant voluntarily signed that affidavit, knowing it was to be notarized and processed, all at his request and initiation and for his benefit. The physical absence of the notary was an irregularity within the statute's meaning. The signing of the affidavit, under these facts, declaring the defendant to be duly sworn on oath was a sufficiently unequivocal act by which the defendant consciously took upon himself the ob-

ligation of an oath. Obviously the defendant was attesting to the truth of that which he stated within the meaning and intent of RCW 9.72.040.

We emphasize that this holding is limited to the matter of a perjury conviction under these facts. It in no manner is concerned with the sufficiency or legal effect of the notarization process for other purposes.

The Court of Appeals is reversed and the perjury conviction affirmed.

STAFFORD, C.J., and FINLEY, HUNTER, and WRIGHT, JJ., concur.

UTTER, J. (dissenting)—The majority opinion ignores the plain requirements of our statutes, creating an oath where there was none and then upholding a perjury conviction for violating it. The respondent was convicted under a statute which makes it a crime to "swear falsely." RCW 9.72.030. To "swear," one must state something "under oath," and an "oath," to be legally recognizable, must be taken in a "mode authorized by law . . ." RCW 9.72.040.

The sole legally authorized method for taking an oath in applications for replacements for lost license plates is established by RCW 46.16.270, which requires that statements in such applications

> shall be subscribed and sworn to *before a notary public or other person authorized to certify to statements upon vehicle license applications.*

(Italics mine.) The fact that respondent did not follow this procedure compels the conclusion that he took nothing that can be legally construed as an oath. Certainly, the law *could* have provided that signing the application outside the presence of the notary was equivalent to taking an oath (cf. RCW 42.24.100), but it did not. Respondent may have sworn in fact, but he could not swear in the eyes of the law without some undertaking in the form it establishes.

As the majority points out, irregularity in the legal form of oath-taking is not a defense to a charge of perjury. RCW

9.72.050. But a total failure to take an oath is. *State v. Heyes*, 44 Wn.2d 579, 269 P.2d 577 (1954). In *State v. Douglas*, 71 Wn.2d 303, 428 P.2d 535 (1967), we stretched this statutory flexibility to its limit in holding that signing a document purporting to be made under oath in the presence of an officer competent to administer an oath was "the equivalent" of legal swearing. Here there was nothing that could similarly substitute for the acts required by law. Respondent was not irregularly administered an oath, he was administered no oath at all—no one was there who could administer one to him. Thus he did not sign an "affidavit,"—a "written oath" (*State v. Howard*, 91 Wash. 481, 486, 158 P. 104 (1916))—even though the document he did sign purported to be one. *Williams v. Pierce County Bd. of Comm'rs*, 267 F.2d 866 (9th Cir. 1959).

Our law has properly eliminated unnecessary rigidity in the oath-taking element of the crime of perjury, but it has not eliminated the element altogether. RCW 9.72.050 and statutes like it

> appl[y] only to cases where some oath was administered, but administered in a manner defective in form. It does not create the obligation of an oath where it has not been consciously assumed in some form; it cannot cure that which never had life enough to be sick.

*People ex rel. Greene v. Swasey*, 122 Misc. 388, 391, 203 N.Y.S. 22 (1924). It does not empower courts to ignore the requirements of the law and create an oath and crime where there was none.

I would follow the courts of Texas (the only jurisdiction in which this precise issue has been addressed) and hold that, where statutes require it, the presence of a legally empowered official is necessary to the creation of a binding oath. *Lowry v. State*, 297 S.W.2d 848 (Tex. Crim. App. 1956); *Sullivan v. First Nat'l Bank*, 37 Tex. Civ. App. 228, 83 S.W. 421 (1904). I would therefore affirm the decision of

the Court of Appeals reversing respondent's perjury conviction. I dissent.

ROSELLINI, HAMILTON, and HOROWITZ, JJ., concur with UTTER, J.

Petition for rehearing denied October 23, 1975.