[No. 44877. En Banc. February 9, 1978.]

FRANCIS WILLIAM SCHOULTZ, *Appellant*, v. THE DEPART-MENT OF MOTOR VEHICLES, *Respondent.*

*Edward John Crowley, Jr.,* and *Richard C. Agman,* for appellant.

*Slade Gorton, Attorney General,* and *W. Howard Fischer, Assistant,* for respondent.

HOROWITZ, J.—This is an appeal from a trial de novo in the Superior Court for Spokane County of the Department of Motor Vehicle's revocation of appellant Schoultz' driver's license. Appellant's license was revoked pursuant to the implied consent law, RCW 46.20.308, for refusal to submit to a chemical test to determine the alcohol content of his blood after he was arrested for driving while under the influence of intoxicating liquor. The trial court affirmed the revocation. The appeal was filed in the Court of Appeals and certified to this court. We affirm.

Appellant Schoultz was stopped by State Patrol Trooper Lofquist for speeding at approximately 2 a.m. on the

morning of February 20, 1975. The officer noticed certain physical signs characteristic of intoxication in appellant and administered routine physical tests to determine the likelihood of intoxication. He then arrested appellant for driving while under the influence of intoxicating liquor, and advised him of his *Miranda* rights. There is no challenge to the propriety of his arrest.

After a brief wait for a tow truck to remove appellant's truck, the officer drove appellant to the State Patrol district office. He told appellant he would be asked to take a Breathalyzer test at the office, but did not go on to explain appellant's rights and obligations under the implied consent law at that time. When they arrived at the State Patrol office appellant refused to get out of the car, protesting he would not take a Breathalyzer test.

Trooper Lofquist, fearing he might have a security problem, decided to drive appellant to the county jail, where the facilities offer greater security. At the jail appellant again refused to get out of the car and had to be forcibly removed. In the Breathalyzer room of the jail, appellant was advised once more of his *Miranda* rights. He asked to call his lawyer in Olympia. He was allowed to do so, but was unable to reach him.

After appellant's attempt to call his lawyer, the officer told him that an attorney was not needed for a Breathalyzer test because it is only the taking of physical evidence. He fully informed appellant of his statutory rights and obligations under the implied consent law and asked appellant to take the test. Appellant refused, insisting he wanted to talk to his lawyer. Trooper Lofquist read the implied consent warnings to appellant twice and explained the consequences of refusal four times. Appellant nonetheless refused to submit to the test. The officer noted 2:57 a.m. as the time of refusal on his report.

Trooper Lofquist filled out his report of refusal either that night or on February 24, immediately before executing the document in the presence of a notary. The notary administered an oath, although the officer could not recall

its text at trial. The oath did include at least a swearing that the signature on the report was his own. The report was submitted to the Department of Motor Vehicles, which revoked appellant's license for 6 months.

This case raises three issues regarding the requirements of the implied consent law. That law provides that any person who operates a motor vehicle on Washington highways is deemed to have given consent to a chemical test to determine the alcohol content of his blood. If a driver is arrested by an officer who has reasonable grounds to believe he was driving while under the influence of intoxicating liquor, but refuses to take a Breathalyzer test after being informed of his right to refuse and the consequences of refusal, the Department of Motor Vehicles (the Department) must revoke his license for 6 months. The questions raised here are: (1) when the arresting officer must first explain the driver's statutory rights and obligations; (2) whether the failure of the officer to make this explanation at a certain time will, as a matter of law, so confuse the driver as to render him incapable of making an intelligent decision whether to submit or refuse; and (3) whether a report of the driver's refusal signed and sworn to before a notary is a sworn report sufficient to give the Department jurisdiction under the statute.

Appellant first contends Trooper Lofquist was under a statutory duty to explain the consequences of refusal when he first told appellant he would be asked to take the Breathalyzer test. Appellant argues the officer's failure to do so waived the state's right to give the statutory warnings and make a second request, because it deprived appellant òf the opportunity to make an intelligent judgment.

The defect in this argument is that there is no demonstrated relationship between the occurrences in this case and any deprivation of the opportunity to knowingly and intelligently decide whether to take the test.

RCW 46.20.308(1) requires:

[The arresting] officer shall inform the person of his right to refuse the test, and of his right to have additional tests

administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test.

Under RCW 46.20.308(3), only a refusal to take the test made after the driver has been so informed may form the basis for revocation of a license. The intent of the requirement for informing the driver of his statutory rights and obligations is to provide the opportunity for the driver to knowingly and intelligently make his decision. *See Department of Motor Vehicles v. McElwain,* 80 Wn.2d 624, 628, 496 P.2d 963 (1972); *Connolly v. Department of Motor Vehicles,* 79 Wn.2d 500, 504, 487 P.2d 1050 (1971).

The facts of this case do not suggest that appellant was deprived of such an opportunity by Trooper Lofquist's failure to fully inform appellant of his statutory rights and obligations when he first mentioned the Breathalyzer test. Indeed, the officer went to great lengths to explain the rights and warnings to appellant under the appropriate conditions of a discussion in the test room itself. The interval between the first mention of the test at the time of the arrest and the discussion in the Breathalyzer room was not unduly long, especially in light of appellant's recalcitrant behavior in refusing to get out of the patrol car. Thus, the facts here demonstrate no inherent prejudice in the procedure followed by Trooper Lofquist.

Appellant's argument that the trooper's behavior waived the right of the State to give the warnings and make a second request is an unwarranted interpretation of the language of the statute. The statute does not on its face forbid repetition of a request to take the test where the first request is unaccompanied by the required explanation. It does provide that only a refusal made following a full statutory explanation may form the basis for a license revocation. As long as the explanation is given, the refusal follows that explanation, and the revocation is based on that informed refusal, the requirements of the statute have been met. We decline to read into the statutory language a

further requirement that the explanation accompany the first request. *Cf. Department of Motor Vehicles v. McElwain, supra* at 628. The Department contends Trooper Lofquist's mention of the test was not a request, but served only to advise appellant that he would be asked to take the test. We hold that, even assuming it was an actual request to take the test, the statute does not forbid a renewed request accompanied by the explanation, especially where, as here, the trooper's conduct was reasonable and nonprejudicial.

■ Appellant next contends that, as a matter of law, a person not advised of the implied consent warnings when first requested to take the Breathalyzer test is confused as to his rights. He reasons that Trooper Lofquist's failure to give the explanation in the first instance rendered him incapable of making an intelligent judgment—not in fact, but in law. We find this contention insupportable.

The question of confusion relates to the statutory intent that a driver be given an opportunity to make a knowing and intelligent decision whether to take the test. The information given to the driver must therefore be reasonably clear. Several opinions of the Court of Appeals have developed the rule that if a person objectively manifests confusion regarding his rights and obligations, the officer must clarify them. *Strand v. Department of Motor Vehicles,* 8 Wn. App. 877, 883, 509 P.2d 999 (1973). *See also Shoemaker v. Department of Motor Vehicles,* 11 Wn. App. 860, 862, 526 P.2d 908, *review denied,* 84 Wn.2d 1014 (1974); *Department of Motor Vehicles v. Riba,* 10 Wn. App. 857, 862, 520 P.2d 942 (1974). The question whether the driver was confused is thus one of fact. *Shoemaker v. Department of Motor Vehicles, supra* at 862. This court has also treated the issue of confusion as one of fact. *Rupke v. Department of Motor Vehicles,* 81 Wn.2d 662, 504 P.2d 297 (1972).

Appellant does not claim, though, that he was in fact confused. He rather claims he was confused as a matter of law because the statutory explanation was not given when the test was first mentioned. No authority for this rule is

cited and no reason given for this court to abandon its practice of addressing the issue of confusion as a question of fact. Furthermore the facts of this case, far from compelling a departure from this practice, demonstrate that every attempt was made to clarify appellant's rights and obligations for him.

Despite appellant's claim to rely on confusion in law, he does appear to argue that he was confused in fact, as well. He points to the succession of events in which he was twice informed of his constitutional rights, once asked to take the test with no statutory explanation, later told no attorney was needed during the test, and finally given the statutory explanation and formally requested to take the test. Inherent in this process, it is claimed, is the possibility of confusion between constitutional rights, including the right to the presence of an attorney during any critical stage of the criminal justice process, and the statutory obligation to give physical evidence, *i.e.,* take a Breathalyzer test, with no attorney present. Appellant alleges he was confused and manifested that confusion when he asked to call his attorney. He further alleges Trooper Lofquist failed to clarify his rights.

This argument also fails. The trial judge held in his oral opinion that confusion was not demonstrated by the evidence, but that if there were confusion, the situation was adequately clarified by Trooper Lofquist. The evidence clearly supports this holding. The alleged manifestation of confusion, appellant's request to call his attorney, was made before appellant was advised of his statutory rights and obligations. Thus it could hardly have been a manifestation of confusion between those rights and constitutional rights. Even assuming the request did manifest confusion regarding his obligation to take the test, the facts demonstrate that the trooper subsequently clarified appellant's rights. He correctly explained that an attorney was not needed for taking a Breathalyzer test because it is merely physical evidence. *See Schmerber v. California,* 384 U.S. 757, 766, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966). He then

read the statutory warnings twice and explained the consequences of refusal four times. This was an adequate response to the alleged manifestation of confusion. We hold the requirements of the statute with regard to explanation of appellant's rights and obligations were fulfilled.

Appellant's final attack is on the validity of the report of refusal submitted by Trooper Lofquist to the Department. RCW 46.20.308(3) provides that the Department shall revoke a license upon receipt of a "sworn report" of the arresting officer that the arrest was proper, the statutory explanation was given, and the driver subsequently refused to submit to the test. Appellant contends the officer's report in this case was not a sworn report within the meaning of the statute, depriving the Department of jurisdiction to revoke his license. *See Metcalf v. Department of Motor Vehicles,* 11 Wn. App. 819, 822, 525 P.2d 819 (1974).

Appellant does not contend that the oath administered by the notary and taken by Trooper Lofquist was insufficient to constitute an oath taking under the laws of this state. It was clearly adequate under the holding of *State v. Douglas,* 71 Wn.2d 303, 309–11, 428 P.2d 535 (1967), that signing a document purporting to be made under oath in the presence of a notary is alone sufficient to constitute the taking of an oath. In this case Trooper Lofquist did more than merely sign his name. He took the oath administered by the notary, which included at least swearing that the signature was his own.

Appellant thus attempts to distinguish between the sufficiency of this procedure to constitute an oath taking and swearing to the truthfulness of the contents of the report. The latter is required by the statute it is argued, and since there is no evidence the trooper did specifically swear to the truthfulness of the contents, the report is not a sworn report. The law in this state does not support such a distinction. In *State v. Douglas, supra,* the issue was the sufficiency of an affidavit requesting the issuance of a search warrant. Since swearing to the truthfulness of the contents of the affidavit is a necessary condition for the issuance of a

warrant, the holding that the warrant was properly issued assumes the oath taken included an affirmation of the truthfulness of the contents of the document. We find that approach equally valid in this case. *McLeod v. Department of Motor Vehicles,* 16 Wn. App. 400, 556 P.2d 563 (1976), *review denied,* 88 Wn.2d 1011 (1977). It conforms with the doctrine that the laws of this state do not require adherence to a formal oath–taking procedure. *See State v. Lewis,* 85 Wn.2d 769, 771, 539 P.2d 677, 80 A.L.R.3d 273 (1975). *See also* Const. art. 1, § 6; RCW 5.28.020, .030, .050, indicating flexibility in finding an adequate form of oath or affirmation. We hold therefore that the report submitted by Trooper Lofquist was a sworn report within the meaning of the statute and the Department has jurisdiction to revoke appellant's driver's license.

Affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.