OPINION
{¶ 1} Appellants Ralph W. Colla, M.D. and Parkside Women's Center, Inc., dba Galen Health Group, appeal the decision of the Court of Common Pleas, Mahoning County, following a jury verdict in favor of Plaintiffs-Appellees Pamela Patterson and Jeffrey Patterson in a medical malpractice action. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant Dr. Colla is an obstetrician-gynecologist, who, in 1990, started the Parkside Women's Center, a women's health-care facility in Youngstown. Dr. Colla saw Appellee Pamela Patterson as a patient in 1998, based upon her complaints of pelvic pain and related discomfort. Dr. Colla eventually recommended that Pamela undergo a laparoscopic procedure to investigate and correct the causes of her pain. This procedure involved the insertion of trocar instruments into the patient's body, through which other surgical instruments would be manipulated. Appellees would later premise their case upon the allegation that a secondary trocar instrument placed in the left lower quadrant of Pamela's abdomen perforated her bowel when inserted by Dr. Colla during the procedure, which took place on April 9, 1998. Pamela began experiencing severe abdominal pain in the days after the procedure, and had to undergo a surgical colon resection and temporary colostomy on April 13, 1998. She was further admitted to intensive care and sustained temporary vision loss on one side due to a stroke. Furthermore, Pamela was on a ventilator for seventeen days due to adult respiratory distress syndrome (ARDS). She also later developed an incisional hernia which required a corrective procedure.
 {¶ 3} On December 10, 1998, appellees filed a medical malpractice action against appellants. Approximately one month before trial, appellants filed a motion in limine, resulting in a ruling that no testimony as to Dr. Colla's bankruptcy proceedings or other lawsuits would be permitted, and that a restriction on Dr. Colla's license by the Arizona State Medical Board[1]
would be admissible only for the purpose of impeachment.
 {¶ 4} On May 28, 2002, a jury trial commenced. On June 4, 2002, a verdict was announced in the amount of $800,000 in damages for Pamela and $100,000 for Jeffrey. The trial court entered a judgment on the verdict on June 18, 2002. On the same day, appellants filed a motion for new trial. Appellees thereafter filed a motion for prejudgment interest. The trial court conducted a hearing on the post-trial motions on September 17, 2002. The court, via a judgment entry filed on January 14, 2003, overruled the motion for new trial and granted appellees' motion for prejudgment interest.
 {¶ 5} Appellants filed a notice of appeal on February 10, 2003, and herein raise the following seven Assignments of Error:
 {¶ 6} "I. The trial court erred to the prejudice of the appellants by overruling their motion for new trial based on the admission of evidence at trial regarding the restrictions of dr. colla's medical license by the arizona medical board.
 {¶ 7} "II. The trial court erred in denying the appellants' motion in limine as to the restriction of dr. ralph colla's medical license by the arizona medical board.
 {¶ 8} "III. The trial court erred by not granting a mistrial and by admitting evidence of a prior youngstown malpractice lawsuit in as evidence.
 {¶ 9} "IV. The trial court erred by not intervening as to prejudicial comments made during closing argument.
 {¶ 10} "V. The trial court erred in denying motion for new trial on the basis the jury award of $900,000 was excessive and the result of passion and prejudice, and inconsistent with the answer to jury interrogatory no. 2.
 {¶ 11} "VI. The trial court erred in awarding prejudgment interest to appellees.
 {¶ 12} "VII. R.C. Sec. 1343.03 is unconstitutional as violative of the right to a jury trial and due process OF LAW."
 {¶ 13} We will address appellants' Second Assignment of Error first.
 II. {¶ 14} In their Second Assignment of Error, appellants argue the trial court erred in denying their motion in limine regarding the restrictions against Dr. Colla's medical license by the Arizona Medical Board.
 {¶ 15} As an initial matter, we are compelled to address appellees' response that appellants failed to preserve this assigned error on appeal by failing to object to questions directed to Dr. Colla about the Arizona medical license issue during the plaintiffs' case-in-chief, when appellees' counsel called, as their second witness, Dr. Colla as if on cross-examination. Instead, appellants' counsel stated the following at the bench prior to opening statements:
 {¶ 16} "Mr. Frasure: Now that we have picked a jury and before opening statements, I wanted to put on the record that I renew my request that I made to the Court a few weeks ago by motion in limine to not get into the restriction, the temporary or provisional restriction, of Dr. Colla's license in Arizona for the main reason it's not final. The Court has ruled that it may be admissible for impeachment purposes, and I just wanted to protect the record because I may possibly get into it with some of the witnesses and/or opening statement, and I didn't want to be heard later that I somehow waived my argument on a potential appeal by just mentioning it in the trial on my own.
 {¶ 17} "The Court: Okay." Tr. at 148-149.
 {¶ 18} The established rule in Ohio is that the grant or denial of a motion in limine is not a ruling on the evidence.Haslam v. Russell, Monroe App. No. 03 MO 3, 2003-Ohio-6724, at ¶ 51, citing State v. Grubb (1986), 28 Ohio St.3d 199, 200-201. "Rather, it is a preliminary ruling, requiring the parties to raise specific evidentiary objections at trial in order to permit the court to consider the admissibility of the evidence in its actual context. [Citation omitted.] Therefore, failure to object to the evidence at trial waives the right of the objecting party to raise the court's ruling on the preliminary motion as error on appeal." Id., citing Grubb at 202, 203.
 {¶ 19} The Supreme Court in Grubb cited several passages from Palmer, Ohio Rules of Evidence Rules Manual (1984), including the following: "An appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial."Grubb at 203, citing Palmer at 446. Thus, "* * * when a question is asked and answered without objection, the error, if any, will be considered to have been waived." Kovshovik v.Mandik (Sept. 29, 1999), Columbiana App. No. 97 CA 41, citingState v. McDonald (1970), 25 Ohio App.2d 6, 11. In Griffith v.Chrysler Corporation, Columbiana App. No. 2000-CO-67, 2003-Ohio-3464, this Court summarized as follows: "[A]t trial, the proponent of the evidence must actually move the court to admit the evidence, whereas the party opposing the evidence must object at that time in order to properly preserve the question for appeal." Id. at ¶ 68, emphasis added, citing Krotine v.Neer, Franklin App. No. 02AP-121, 2002-Ohio-7019, at ¶ 10, andState v. Maurer (1984), 15 Ohio St.3d 239, 259-260. Moreover, in Jones v. Capco, Cuyahoga App. Nos. 81748, 81892, 2003-Ohio-5807, the Eighth District Court of Appeals applied the doctrine of waiver to a defendant who, prior to opening statements, renewed a motion in limine as to disputed videotaped medical testimony, but then failed to object before or after the tape was played to the jury. Id. at ¶ 8. Our research suggests such caselaw is in accord with the well-established rule that "[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." See State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, vacated in part on other grounds (1978),438 U.S. 911.
 {¶ 20} The record in the case sub judice reveals that following opening arguments, appellees' counsel first calls Jeff Patterson, Pamela's husband Appellees' counsel then calls, as previously noted, Dr. Colla as if on cross-examination. During this cross-examination, without qualifying Dr. Colla as an expert witness and without the benefit of Dr. Colla's testimony on direct examination, appellees' counsel proceeds into questions concerning the Arizona licensing proceedings. The evidence which the trial court had excluded (except for impeachment purposes), via its prior ruling on the motion in limine, pertained to Arizona proceedings which occurred subsequent to the medical events forming the basis of appellees' lawsuit. It also appears that the Arizona proceedings were provisional, in that Dr. Colla had not had an opportunity to present evidence to the Arizona authorities when they issued their opinion.
 {¶ 21} In addition to the aforementioned statement prior to opening arguments (Tr. at 148-149), appellants' counsel entered five objections during plaintiffs-appellees' call of Dr. Colla as if on cross-examination. The first takes place when appellants' counsel objects to a question concerning whether or not lawyers for the Arizona Attorney General's office "protect the public interest." Tr. at 320. The second objection by appellants' counsel occurs when plaintiffs-appellees' counsel asks Dr. Colla whether the Arizona Medical Board's report makes reference to another Youngstown patient. Tr. at 322. The third and fourth are made when plaintiffs-appellees' attorney asks Dr. Colla about a certain news release issued by the Arizona Board on December 10, 2001. Tr. at 324, 325. The fifth and final objection was made in regard to a query about an article in the "Havasu Connection," a local magazine in Arizona. Tr. at 327.
We note the aforesaid objections do not even commence until a point in the transcript at which plaintiffs-appellees' counsel had already questioned Dr. Colla solely about the Arizona situation for approximately eight pages. Moreover, we find the above trial objections are narrowly focused and do not seek to re-invoke the general request in the earlier motion in limine that all reference to the Arizona Medical Board's actions be prohibited. When a case turns upon such procedural questions, an appellate court must conduct its analysis on a case-by-case basis. Based on the previously cited caselaw, we conclude that a timely objection to opposing counsel's questions must be interpreted as one made within a reasonable time to allow the trial court to rule thereon. In the case sub judice, it appears appellants' trial counsel believed that his pre-opening statements to the court, made significantly prior to Dr. Colla's testimony, were sufficient to protect the record for purposes of appeal. From the record, however, we cannot determine whether the court allowed appellees' questioning of Dr. Colla as some type of impeachment testimony, or whether it declined to exclude the questioning simply due to appellants' trial counsel's decision not to object at the time the "Arizona" questions were propounded to Dr. Colla.
 {¶ 22} As such, despite appellants' counsel's reiteration of his request prior to his opening argument, we hold appellants have failed to preserve the issue for appeal pursuant to the Ohio Supreme Court's mandate in Grubb.
 {¶ 23} Appellants' Second Assignment of Error is therefore overruled.
 I. {¶ 24} In their First Assignment of Error, appellants argue the trial court erred in denying their request for a new trial based on the admission of evidence pertaining to the status of Dr. Colla's medical license with the Arizona Medical Board. We disagree. The decision to grant or deny a motion for new trial rests in the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. Sharp v.Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312. Appellants' motion for new trial recited Civ.R. 59(A)(4) (see Assignment of Error V., infra) and Civ.R. 59(A)(9), the latter of which states that a new trial may be granted on the grounds of "[e]rror of law occurring at the trial and brought to the attention of the trial court by the party making the application." However, this Court has previously held that a party cannot avail themselves of Civ.R. 59(A)(9) where there has been a failure to object to the admission of disputed evidence at trial. See Bishop v. MunsonTransp., Inc. (March 27, 2000), Belmont App. No. 97BA62. Pursuant to Bishop, we are compelled to find the existence of waiver as to Civ.R. 59(A)(9).
 {¶ 25} We are nonetheless left with a consideration of whether plain error has occurred in regard to the trial court's denial of a new trial based on the Arizona licensing questions elicited during the proceedings. The doctrine of plain error is limited to exceptionally rare cases in which the error, left unobjected to at the trial court, "rises to the level of challenging the legitimacy of the underlying judicial process itself." See Goldfuss v. Davidson, 79 Ohio St.3d 116, 122,1997-Ohio-401. Having reviewed the record in this matter, in particular the testimony of appellees' expert, Dr. Michael Baggish (see our analysis under appellants' Third Assignment of Error, infra), we are unconvinced that an invocation of plain error is warranted under the facts and circumstances presented herein.
 {¶ 26} Appellants' First Assignment of Error is therefore overruled.
 III {¶ 27} In their Third Assignment of Error, appellants argue the trial court erred in permitting evidence regarding a prior lawsuit against Dr. Colla in Mahoning County. We disagree.
 {¶ 28} A court's decision to admit or exclude evidence will not be disturbed absent an abuse of discretion. State v. Moman,
Columbiana App. No. 02CO52, 2004-Ohio-1387, at ¶ 9, citing Statev. Graham (1979), 58 Ohio St.2d 350, 352. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id., citing State v. Weaver (1988),38 Ohio St.3d 160, 161. As a general rule, all relevant evidence is admissible. Evid.R. 402. However, Evid.R. 403(A) reads: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." As an appellate court, we will not interfere with a trial court's balancing of probativeness and prejudice "* * * unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby." State v. Slagle (1992),65 Ohio St.3d 597, 602, certiorari denied (1993), 510 U.S. 833.
 {¶ 29} At first blush, evidence about the prior Mahoning County lawsuit would appear irrelevant. Furthermore, we are not persuaded by appellees' counter-argument that appellants "opened the door" by asking Dr. Colla if his Ohio medical license had ever been suspended or revoked (see Tr. at 796-797), as there is no automatic nexus between losing a lawsuit and losing one's license to practice. However, as we have previously concluded that potential errors pertaining to the Arizona Board were not properly preserved, we are unable to ultimately find the Mahoning lawsuit irrelevant, since the latter case became one of the issues investigated by the Arizona authorities. Tr. at 860-861. Moreover, even if we were to find error in this regard, we would be inclined to hold the error harmless. "In a civil case, a harmless error is one which does not affect the substantial rights of the parties." Leon v. Caroselli (May 21, 1997), Hamilton App. Nos. C-960364, C-960612, 1997 WL 266761, citingLewis v. Roselle (1990), 63 Ohio App.3d 254, 255, jurisdictional motion overruled (1990), 54 Ohio St.3d 707. While both sides presented evidence regarding whether there had been a breach of the standard of care, appellees' expert, Dr. Michael Baggish, during his testimony faulted Dr. Colla not only for causing Pamela's bowel perforation and not diagnosing the situation during the actual laparoscopic procedure, but for failing to recognize the perforation and abdominal infection during the subsequent post-operative days (Tr. at 467-496). Based on the record before us, we hold the jury heard sufficient evidence, exclusive of the less than two pages of transcript regarding the other Mahoning suit, such that the substantial rights of appellants were not affected.
 {¶ 30} Appellants' Third Assignment of Error is therefore overruled.
 IV {¶ 31} In their Fourth Assignment of Error, appellants contend the trial court erred in failing to correct commentary by appellees' counsel during closing arguments. We disagree.
 {¶ 32} Trial counsel should be afforded great latitude in closing argument. Pesek v. Univ. Neurologists Assn., Inc.
(2000), 87 Ohio St.3d 495, 501, citing State v. Champion
(1924), 109 Ohio St. 281, 289. Where gross and abusive conduct occurs during closing, a trial court should correct the prejudicial effect of counsel's misconduct. Snyder v. Stanford
(1968), 15 Ohio St.2d 31, 37.
 {¶ 33} Appellants cite the following statements by appellees' counsel:
 {¶ 34} "When you render a verdict as good citizens of this county because you're doing the right thing for the parties in this case, if you decide that what we have said is right and true and that we have proven this case by a preponderance of the evidence, this verdict for plaintiff will have an impact way beyond Mahoning County. This verdict will cry out of the courthouse doors, will ring out of this courthouse down to Arizona where he's treating patients down there." Tr. at 954-955.
 {¶ 35} Although the trial court sustained appellants' counsel's objection to the aforesaid, the court did not instruct the jury to disregard the comments, although it subsequently reminded the jury that opening and closing arguments are not evidence. Tr. at 962. Appellants contend the cited counsel commentary was another example of appellees' attempt to persuade the jury that Dr. Colla was a "bad doctor," and accordingly, must have been equally bad in his treatment of Pamela. Appellants' Brief at 19. Nonetheless, in light of the entire record, we do not find "gross and abusive conduct," and we are unpersuaded that the court abused its discretion in declining to instruct the jury after sustaining the objection in appellants' favor.
 {¶ 36} Appellants' Fourth Assignment of Error is overruled.
 V. {¶ 37} In their Fifth Assignment of Error, appellants argue that the trial court erred in denying their request for a new trial on the grounds of excessive verdict under Civ.R. 59(A)(4). We disagree.
 {¶ 38} In determining whether a trial court abused its discretion by overruling a motion for new trial brought pursuant to Civ.R. 59(A)(4), an appellate court must review the entire record to see if an allegedly improper jury verdict was against the manifest weight of the evidence or based upon incompetent evidence or improper argument or conduct of counsel. Medvec v.Cook (Apr. 28, 1994), Cuyahoga App. No. 65183, at 2-3. "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." Moskovitz v. Mt. Sinai Med.Ctr. (1994), 69 Ohio St.3d 638, 655.
 {¶ 39} The crux of appellants' argument is that, based on the response to Jury Interrogatory No. 2, the jury purportedly did not find that Dr. Colla was negligent in causing the bowel perforation, but only in not recognizing and doing follow-up treatment in a timely fashion. This, appellants suggest, viewed in conjunction with appellants' expert's opinion that the same corrective surgery would have been required regardless of when the perforation occurred, demonstrates an excessive verdict by the jury, given that Pamela was left with no apparent permanent injury other than scarring. See Appellants' Brief at 23.
 {¶ 40} However, we are unconvinced by appellants' arguments. The jury, in said interrogatory, simply found Dr. Colla "fail[ed] to recognize signs and symptoms of bowel trauma * * *." This response leaves open the possibility that the jury found Dr. Colla had failed to detect the bowel trauma both during and after his April 9, 1998 laparoscopic operation on Pamela.
 {¶ 41} Moreover, appellants did not point out their alleged inconsistency to the trial court. A party must object to an inconsistency between an answer to a special interrogatory and a general verdict before the jury is discharged. Greynolds v.Kurman (1993), 91 Ohio App.3d 389, 395. The rationale of this view is that it promotes the efficiency of trials and prevents "jury shopping" by litigants after the verdict. Id. Nonetheless, upon review of the record, we are unpersuaded that the denial of a new trial on grounds of an excessive verdict constituted an abuse of discretion under the facts and circumstances of this case.
 {¶ 42} Appellants' Fifth Assignment of Error is overruled.
 VI. {¶ 43} In their Sixth Assignment of Error, appellants argue the trial court erred in awarding prejudgment interest to appellees. We disagree.
 {¶ 44} An appellate court's review of a trial court's award of prejudgment interest pursuant to R.C. 1343.03(C) is governed by an abuse of discretion standard. See Landis v. Grange Mut.Ins. Co., 82 Ohio St.3d 339, 1998-Ohio-387. A trial court must find a party failed to make a good faith effort to settle before it may award pre-judgment interest. Andrews v. Ruozzo, Mahoning App. No. 99CA265, 2001-Ohio-3352, citing Kalain v. Smith
(1986), 25 Ohio St.3d 157. If there is competent, credible evidence supporting the trial court's decision, there is no abuse of discretion. Fraternal Order of Eagles v. Rose (Feb. 28, 2000), Stark App. No. 1999CA00204, citing Middendorf v.Middendorf (1998), 82 Ohio St.3d 397.
 {¶ 45} Appellants first note that an evaluation of the case by appellants' (defense) counsel two weeks prior to trial had been that there was a 50% chance of a defense verdict. P.T. Tr. at 20; Plaintiffs' Exhibit 5. However, defense counsel made a subsequent evaluation, based on a review of the testimony of Dr. Patel, the surgeon who did the follow-up colon resection and temporary colostomy on Pamela. Counsel at that time revised upwards to 75% the chances of a defense verdict. P.T. Tr. at 31.
 {¶ 46} However, as appellees point out, appellants thus had a belief that they had a 25% to 50% chance of losing the case. Appellants further had predicted a verdict range of $300,000 and $700,000. In light of such numbers, appellees contend that appellants should have made a settlement offer of between $75,000 and $350,000; however, appellants chose a "no-offer" position.
 {¶ 47} We are reluctant to solely apply appellees' rigid percentage formula to the issue of good faith negotiation. Nonetheless, the record reveals appellants proceeded on a defense theory that Pamela's bowel perforation was caused by a lingering thermal injury manifesting shortly before her emergency colon resection (see defense testimony of John Karlen, M.D.), even though two pathologists initially retained by appellants had examined the tissue slides and could not support this theory. Tr. at 948; P.T. Tr. at 26. Appellants finally procured Laszlo Makk, M.D., as an expert witness who opined that the slides revealed an electrothermal burn (P.T. Tr. at 26, Tr. at 579). Considering all the facts set forth above, we do not find the trial court abused its discretion in ordering appellants to pay prejudgment interest on the basis of failure to negotiate in good faith.
 {¶ 48} Appellants' Sixth Assignment of Error is therefore overruled.
 VII. {¶ 49} In their Seventh Assignment of Error, appellants argue that R.C. 1343.03 is unconstitutional. We disagree.
 {¶ 50} When examining legislative enactments, there must be afforded a strong presumption of constitutionality. Cincinnativ. Langan (1994), 94 Ohio App.3d 22, 640 N.E.2d 200. "In order to prevail, the party asserting that an ordinance is unconstitutional must prove his assertion beyond a reasonable doubt." Id. at 30, 640 N.E.2d 200.
 {¶ 51} Appellants first contend an award of prejudgment interest is violative of the right to a jury trial under the Ohio and United States Constitution. We find this argument without merit pursuant to Galayda v. Lake Hospital Systems (1994),71 Ohio St.3d 421.
 {¶ 52} Appellants secondly contend R.C. 1343.03 is unconstitutionally vague, as it does not define "fail[ure] to make a good faith effort to settle." In State v. Young, (Ohio 1980), 62 Ohio St.2d 370, 406 N.E.2d 499, the Ohio Supreme court held that "* * * a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * *" Id. at 372, 406 N.E.2d 499, quoting Connally v.General Construction Co. (1926), 269 U.S. 385, 391,46 S.Ct. 126, 70 L.Ed. 322.
 {¶ 53} We find the statute is not unconstitutionally vague. See Edgerson v. Cleveland Electric Illuminating Co. (1985),28 Ohio App.3d 24. Moreover, the Ohio Supreme Court in Kalain,
supra, has set forth a four-part test to further guide trial courts on the issue of "good faith" settlement efforts under R.C.1343.03(C).
 {¶ 54} Appellants' Seventh Assignment of Error is therefore overruled.
 {¶ 55} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Mahoning County, Ohio, is hereby affirmed.
Boggins, J., concurs.
Farmer, P.J., dissents.
[1] Dr. Colla has relocated to Arizona. He began practicing medicine there in April 1999. Tr. at 265.